**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FARMLAND INDUSTRIES, INC., et al., | ) | Case No. 02-50557 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| GAF HOLDINGS, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 07-4026 |
| | ) | |
| PHILLIP L. RINALDI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Once again the Court has been asked to consider, albeit from an *ostensibly* different perspective, the propriety of the sale of Farmland Industries' refinery and fertilizer plant located in Coffeyville, Kansas ("Coffeyville Assets") to Coffeyville Resources, LLC. This time the challenge comes in the form of a complaint by Plaintiff, GAF Holdings, LLC ("GAF") seeking damages for tortious interference with an alleged business expectancy. GAF contends, essentially, that the Defendants conspired to prevent GAF from participating in an auction of the Coffeyville Assets and misled the Court in their efforts to obtain approval of the sale to Coffeyville Resources, LLC, thereby preventing GAF and the Farmland bankruptcy estate from realizing the true value of the refinery, which GAF estimates is close to $1 billion. The Defendants seek a dismissal of the complaint, arguing, *inter alia*, that it is an impermissible attack on the validity of the various orders approving the procedures, validity, and finality of the sale (the "Sale Orders"). GAF strenuously denies that its complaint impinges on the validity of the Sale Orders. Rather, GAF maintains that its complaint is a completely separate cause of action based on state law, which does not conflict with the findings or effects of the Sale Orders. GAF further maintains that its complaint is viable because it is based on new evidence.

The Court held a hearing on the Defendants' motions to dismiss on June 4, 2007, to provide the parties with an additional opportunity to orally argue their positions and to address the issue of

permissive abstention which the Court raised *sua sponte*. Upon consideration of the oral arguments, pleadings, and relevant law, the Court finds that permissive abstention is not warranted but that dismissal with prejudice is.

## STANDARD OF REVIEW

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint; the factual allegations of the complaint are taken as true and construed in the light most favorable to the plaintiff.[1] Until several months ago, the long-accepted rule had been that a complaint would not be dismissed unless it appeared beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief.[2] However, in *Bell Atlantic Corp. v. Twombly*[3] the Supreme Court indicated that the "no set of facts" standard should be abandoned and that a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is *plausible* on its face."[4] In other words, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."[5] Needless to say, the courts are still wrestling with the effects of that decision on Rule 12(b)(6) jurisprudence.[6] Fortunately, this Court can wait until some of the dust settles on the new standard, because it finds that dismissal of this case is warranted under either standard.

---

[1] *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003). *Cf. Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (A court is, however, "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

[2] *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007).

[3] *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007).

[4] *Id*. at 1974 (emphasis added).

[5] *Id*. at 1965.

[6] *Compare Iqbal v. Hasty*, 2007 WL 1717803 (2nd Cir. 2007) (interpreting *Twombly* as "requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible"); *with Aktieselskabet AF 21 v. Fame Jeans, Inc.*, 2007 WL 1655877 (D. D.C. 2007)(suggesting that *Twombly* created an across-the-board heightened pleading standard).

**BACKGROUND**

On a motion to dismiss for failure to state a claim, a court may look beyond the complaint to matters of public record and doing so does not convert the motion to one for summary judgment.[7] The background relevant to the motions to dismiss now before the Court is taken from the Plaintiff's complaint and from the pleadings filed and orders entered in the Farmland Industries, Inc. ("Farmland") bankruptcy, case number 02-50557. As noted above, in ruling on a motion to dismiss, the Court liberally construes the complaint in a light most favorable to the plaintiff, accepting the factual allegations as true. The Court does not, however, have to accept the truth of factual allegations that contradict findings established by final orders of the Court, nor is the Court obliged to recite again here all of the allegations of misconduct raised (and rejected) in GAF's previous motion under Fed. R. Civ. P. 60(b) for relief from the Court's order approving the sale of the Coffeyville Assets to Coffeyville Resources, LLC. Therefore, the Court's recitation of the background relevant to the Defendants' motions to dismiss is limited to facts "newly" discovered by GAF and to factual allegations consistent with the Court orders implicated by the Plaintiff's complaint and the Defendants' motions.

*The Parties*

1.      Plaintiff GAF Holdings, LLC is a Delaware limited liability company incorporated in 1999 for the purpose of acquiring Farmland's petroleum refinery located in Coffeyville, Kansas.

2.      Defendants Pegasus Partners II, LP, Pegasus Investors II, L.P., and Pegasus Capital Advisors, LP (collectively, "Pegasus") are Colorado limited partnerships. These defendants formed and owned Coffeyville Resources, LLC ("CRLLC"), a special purpose entity formed for the purpose of acquiring certain refinery and fertilizer production assets from Farmland.

3.      Defendant Philip L. Rinaldi ("Rinaldi") was an executive of Pegasus and the chief executive officer and a director of CRLLC.

4.      Defendant Stanley A. Riemann ("Riemann") was the president of the Fertilizer & Petroleum Group of Farmland Industries, Inc. He is currently an executive with CRLLC.

---

[7] *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1101 (8th Cir. 2000). *See also*, 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 299 (1990) (court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

5.      Defendant Robert Terry ("Terry") was the CEO of Farmland Industries, Inc.

6.      Defendant J. P. Morgan Trust Company, National Association is Liquidating Trustee of the Farmland Industries, Inc. Liquidating Trust ("Liquidating Trustee").[8]

*History of the Sale*

As noted above, GAF was formed in 1999 for the purpose of acquiring Farmland's petroleum refinery (but not the adjoining coke-gasification fertilizer complex)[9] located in Coffeyville, Kansas. GAF proposed to purchase the refinery for $170,000,000, plus a $25-$30 million "turnaround" upgrade which GAF agreed to perform in lieu of Farmland having to perform the same. Farmland and GAF Refining, LLC, a controlled subsidiary of GAF, executed a letter of intent on March 15, 2001. The final details of the transaction were completed by the end of August 2001, but GAF's financing for the purchase fell through and GAF was unable to find alternative financing at the time.

Farmland and other related entities (collectively, "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on May 31, 2002.

On July 21, 2003, Pegasus submitted to the Bankruptcy Court a letter of intent ("LOI") setting forth its proposal to purchase the Debtors' petroleum refinery and fertilizer complex in Coffeyville, Kansas, a related pipeline, and the Phillipsburg terminal (collectively, the "Coffeyville Assets"). GAF alleges that it first found out about Farmland's intention to sell the Coffeyville Assets around this time, when Defendant Terry invited GAF to submit its own stalking-horse bid. According to GAF, Terry promised Pete Gotcher, an officer of GAF, that GAF could recover its investment in the aborted 1999-2001 acquisition effort if GAF submitted the stalking-horse bid.[10]

---

[8] The complaint does not allege any wrongdoing on the part of the Liquidating Trustee. Apparently, the Liquidating Trustee was named as a defendant in the event it asserted an interest in any damages recovered by GAF. Therefore, references to "the Defendants" in this Memorandum Opinion do not include the Liquidating Trustee unless specified otherwise.

[9] The coke-gasification plant manufactured fertilizer from a by-product of Farmland's refinery operation. CRLLC purchased the refinery and the plant.

[10] GAF contends that the only inference which can be drawn from Terry's comment is that GAF could recover these losses only if it became the stalking-horse bidder and earned a break-up fee upon Pegasus becoming the actual purchaser, thereby reinforcing GAF's contention that it was only contacted to act as a shill. That is not the only logical inference to be drawn from that comment; on the facts presented, Terry's comment could just as easily be interpreted as suggesting that GAF could profit from purchasing the assets, just as CRLLC ultimately did.

Upon being contacted by Terry, GAF requested an opportunity to conduct a due diligence review of the Coffeyville Assets, and on August 1, 2003, GAF and Farmland signed a confidentiality agreement which Farmland required as a condition of allowing GAF to conduct due diligence on its contemplated bid to acquire the Coffeyville Assets.

The Court conducted a hearing on July 29, 2003, for approval of the Pegasus LOI upon notice to creditors and others. The Court entered an amended order approving the LOI on August 11, 2003. GAF did not object to the motion to approve the LOI, nor has it ever appealed or otherwise challenged the order approving the LOI.

On September 25, 2003, the Debtors and CRLLC, Pegasus's affiliate and designee, entered into an Asset Sale and Purchase Agreement ("Purchase Agreement"), and the Debtors filed a motion ("Sale Motion") for approval to sell the Coffeyville Assets to CRLLC in accordance with the Purchase Agreement on the same day. GAF did not object to the Sale Motion, and on October 10, 2003, the Court entered an order (the "Sale Procedures Order") (1) approving auction and bid procedures for the sale of assets; (2) approving a break-up fee for the stalking-horse bidder, CRLLC; and (3) approving the form and manner of notice. GAF has never appealed or otherwise challenged the Sale Procedures Order.

On October 29, 2003, GAF submitted a bid on the Coffeyville Assets. On October 30, the Debtors rejected GAF's bid for several reasons, including the bid's alleged failure to contain information that would allow Farmland to determine the actual value of the bid, the improper format of the bid, the absence of necessary exhibits and schedules, and the lack of a deposit of 10% of the bid amount, as required by the bid and auction procedures set forth in the Sale Procedures Order. GAF did not take any steps in the Bankruptcy Court to contest the Debtors' decision at that time. On November 14, 2003, the Court entered an order ("Sale Order") approving the Purchase Agreement and authorizing the sale of the Coffeyville Assets to the only Qualified Bidder, CRLLC.

GAF did not appeal the Sale Order, but on February 2, 2004, GAF filed a motion pursuant to Fed. R. Civ. P. 60(b) for relief from the Sale Order ("Rule 60(b) Motion"), arguing primarily that the Coffeyville Assets should be placed back on the market for sale because a member of the Debtors' senior management – Defendant Riemann – had a conflict of interest that impermissibly influenced the bidding and purchase price; that GAF had been improperly impeded from conducting

due diligence to formulate its own bid for the Coffeyville Assets; and that the parties to the sale had misrepresented the value paid for the Coffeyville Assets.

The Court held a hearing on the Rule 60(b) Motion on February 11, 2004, and issued a Memorandum Opinion on February 19, 2004, denying the motion. In ruling on the Rule 60(b) Motion, the Court found, *inter alia*, that the motion implicated CRLLC's status as a "good faith" purchaser, as that term is used in section 363(m) of the Bankruptcy Code (11 U.S.C. § 363(m)); that GAF failed to meet even a minimal preponderance threshold of evidence that the Debtors engaged in fraud, misrepresentation, or other misconduct that impermissibly affected the auction and bid procedures; that the sale was conducted at arm's length and with intense negotiations; and that neither party to the sale engaged in egregious misconduct directed to the Court nor did they fabricate evidence. Based in part on these findings, the Court determined that there was no reason to upset the validity and effect of the Sale Order. GAF did not appeal or challenge in any respect the Court's ruling on the Rule 60(b) Motion.

On February 20, 2004, this Court issued an order authorizing an amendment to the Purchase Agreement, authorizing the Debtors to take all necessary action to effectuate the terms of the amended Purchase Agreement, and further authorizing the Debtors to close the purchase of the Coffeyville Assets under the amended Purchase Agreement at any time. This Order reaffirmed the Court's finding that CRLLC was entitled to the protections provided by § 363(m). GAF has never appealed or otherwise challenged this order.[11]

*"New" Evidence*

A few preliminary words about GAF's allegedly "new" evidence – At the oral argument on the motions to dismiss, counsel for GAF stated, unequivocally, "Our claim is based on newly discovered evidence." If that is indeed the case, then GAF's complaint faces three hurdles right out of the gate. First, the allegedly "new" evidence introduced in the complaint is not particularly new. In fact, a careful reading of the complaint reveals that the only new evidence alleged – facts gleaned from the Form "S-1" CRLLC filed with the Securities and Exchange Commission on February 11,

---

[11] The Court will refer to the Sale Procedures Order, Sale Order, Memorandum Opinion denying the Rule 60(b) Motion, and the February 20, 2004 order authorizing an amendment to the Purchase Agreement collectively as the "Sale Orders."

2005,[12] and evidence of CRLLC's sale of the Coffeyville Assets to Goldman Sachs/Kelso, for a rumored price of "$1 billion" – is close to two years old.  GAF has not offered any reason for the delay in bringing this lawsuit on the basis of this "new" evidence.

Second, GAF's emphasis on the "new" evidence belies its position that its complaint is not a collateral attack on the Sale Orders.  If the complaint alleges a truly independent tort, than its timeliness would only be judged by Missouri's five-year statute of limitations for tort actions.[13]

Finally, and perhaps most damaging to GAF's complaint, is that none of the "new" facts alleged undermines the Court's findings in the Sale Order or the Rule 60(b) Memorandum Opinion that GAF was never a "Qualified Bidder" under the terms of the Sale Procedures Order. Consequently, as discussed below, GAF cannot establish an essential element of its central claim in this lawsuit, *i.e.*, the existence of a valid business expectancy, which is dependent on GAF's purported ability to buy the Coffeyville Assets but for the conduct of the Defendants.

Putting those hurdles aside, GAF gleans the following facts from CRLLC's February 11, 2005 Form S-1:

1.      Farmland generated over $53 million in revenues in  during the 62 days the Coffeyville Assets were operated by Farmland in 2004 before the March 3, 2004 closing.

2.      At the same time the Defendants were allegedly representing to the Court that the Coffeyville Assets were, essentially, an albatross that Farmland should be content to sell at the price offered by CRLLC, CRLLC was negotiating to borrow $225 million against the Coffeyville Assets.  CRLLC completed this transaction on May 10, 2004, and paid a $100 million dividend to "shareholders for earnings distributions, preferred returns and return of capital" on the same day.  Defendants Rinaldi and Riemann were among the shareholders of CRLLC who received a dividend.

3.      With regard to the revenue generated by the Coffeyville Assets immediately preceding and following the sale to CRLLC, the Form S-1 stated:

|  | 62 days ended 3/2/04 | | 212 days ended 9/30/04 | |
|---|---|---|---|---|
| Net Sales: | <u>Revenue</u> | <u>Daily Rev.</u> | <u>Revenue</u> | <u>Daily Rev.</u> |

---

[12] A Form S-1 is filing used by public companies to register their securities with the SEC. The S-1 contains basic business and financial information on an issuer with respect to a specific securities offering.

[13] *See D'Arcy and Associates, Inc. v. K.P.M.G. Peat Marwick, L.L.P.*, 129 S.W.3d 25, 29 (Mo. Ct. App. 2004).

| | | | | |
|---|---|---|---|---|
| Nitrogen | $19,446,164 | $313,648 | $63,295,667 | $298,564 |
| Petroleum | $241,640,365 | $3,897,425 | $910,264,620 | $4,293,701 |

GAF maintains that all of this "new" evidence shows that the Defendants under-represented (*i.e.*, misrepresented) the value of the Coffeyville Assets in an attempt to mislead the Court into believing that the sale to CRLLC was a good deal which should be approved quickly and without close scrutiny.

## DISCUSSION

There are two grounds for dismissal of GAF's complaint.[14] The Court first finds that, despite GAF's vehement denial, the complaint is, indeed, a collateral attack on the Sale Orders – an attack that is prohibited by the doctrine of collateral estoppel, the *in rem* protections afforded purchasers of bankruptcy estate assets under 11 U.S.C. § 363, and the limitations set forth in Fed. R. Civ. P. 60(b). Second, even taken on its face, GAF's complaint fails to state a claim upon which relief can be granted because the facts in the complaint (as augmented by the public record) cannot establish a claim for tortious interference under Missouri law. While either of these grounds, standing alone, would be sufficient to dismiss GAF's complaint, the Court will discuss both in the hopes that it will put an end to GAF's belated attacks on the sale of Farmland's Coffeyville Assets to CRLLC.

---

[14] There are actually three grounds warranting dismissal of the Plaintiff's complaint, although the Court only discusses two in detail. The third reason is that GAF lacks standing to pursue this action – which is the Liquidating Trustee's contention. But the Court finds that GAF lacks standing for a reason different than the one argued by the Trustee.

The Liquidating Trustee contends that GAF's action is precisely the type of action contemplated by § 363(n), and that § 363(n) confers standing to pursue such actions only on a trustee. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 120 S.Ct. 1942 (2000) (interpreting similar language in § 506(c), *i.e.*, "the trustee may..." as conferring standing only on the trustee). GAF counters that its action is not barred by § 363(n) because tortious interference with business expectancy is a different cause of action, with a wholly different purpose – *i.e.*, compensating a would-be winning bidder's expectancy, not the bankruptcy estate's loss. The Court does not need to determine whether these two causes of action are indeed separate and distinct because the Court finds (below) that GAF has failed to establish that it had a reasonable expectation it would have been the winning bidder but for the Defendants' allegedly tortious conduct. Without such an expectancy, the estate is the only party that would be aggrieved by the allegedly improper sale of the Coffeyville Assets and, therefore, the only one with standing to challenge the sale.

*1. GAF's Complaint Constitutes an Impermissible Collateral Attack on the Sale Orders.*

"Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment."[15] In this case, not only would a plaintiff's judgment on the complaint overrule key findings in the Sale Orders, but the Court is hard pressed to find that the complaint has an independent purpose or contemplates some other relief. The fact that GAF does not seek to undo the sale with regard to title is not dispositive; it is sufficient that the Plaintiff is seeking to undo the economics of the sale by seeking damages against CRLLC, placing itself in CRLLC's economic position as the successful buyer and reseller of the Coffeyville Assets. GAF is bound by the Sale Orders, which became final more than three years ago, and those orders are an insuperable barrier to GAF's complaint.

The orders are binding on GAF under two principles – collateral estoppel and the *in rem* protections conferred on CRLLC under 11 U.S.C. § 363(m).

To the extent that GAF was a party to the sale proceedings, and there is precedent for finding that it was,[16] the Sale Orders are binding on GAF under the doctrine of collateral estoppel. Collateral estoppel, as applied to a decision rendered by a federal court (this Court) has four requirements: the issue sought to be established by collateral estoppel in the second proceeding must be the same as the issue in the first proceeding, and that issue must have been actually litigated, determined by a valid and binding final judgment, and central to the first judgment.[17] All of these elements are present here.

The first element requiring an identity of issues is met because, as noted above, relief cannot be granted on GAF's complaint without overruling numerous findings from the Sale Orders. In fact, it is borderline cavil to argue that GAF's complaint alleging tortious interference

---

[15] *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) (citing *Mitchell v. Village Creek Drainage Dist.*, 158 F.2d 475, 478 (8th Cir. 1946), in the context of a collateral attack on a bankruptcy court order).

[16] *See Gekas v. Pipin* (*In re Met-L-Wood Corp.*), 861 F.2d 1012, 1016-17 (7th Cir. 1988); *Miller*, 462 F.2d at 360 (creditors participating in proceeding held to be parties for purposes of *res judicata*). At the very least, collateral estoppel would apply to GAF with regard to its Rule 60(b) motion – as the movant, GAF was, by definition, a party to the proceeding.

[17] *In re Piper Aircraft Distribution System Antitrust Litigation*, 551 F.2d 213, 218-19 (8th Cir. 1977).

and conspiracy does not conflict with those findings. The very gist of this suit is that the sale of the Coffeyville Assets to CRLLC was improper, yet there are no fewer than six previous findings of the Court confirming the propriety of the sale. The most salient of these findings is the Court's determination in paragraph L of the Sale Order, which states:

> The Agreement and the transactions contemplated by the Agreement were negotiated and have been undertaken by Debtors and Buyer at arm's length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code. No qualifying Competing Bids were received in accordance with the Procedures Order. As a result of the foregoing, Debtors and Buyer are entitled to the protections of section 363(m) of the Bankruptcy Code with respect to all aspects of the Agreement.

This finding alone defeats GAF's claim of tortious interference.[18]

Other findings conflicting with the allegations in GAF's complaint include (but are not limited to): paragraphs H, I, and K of the Sale Order,[19] the finding in the Rule 60(b) Memorandum Opinion that, "[t]he ultimate deal with Pegasus was conducted at arms-length and with intense negotiations," and the Court's February 20, 2004 order authorizing an amendment to the Purchase Agreement, in which the Court again found that CRLLC is entitled to the protections provided by § 363(m).

None of the other elements of collateral estoppel have been challenged, and the Court finds that they are, indeed, present here – the issues were actually litigated, the issues were determined by valid and binding final orders, and the issues were central to the Sale Orders.

In addition to arguing that the issues decided in the Sale Orders do not conflict with the allegations in its Complaint, GAF lobbies for an equitable exception to the application of equitable estoppel, relying on the statement by the Eighth Circuit Court of Appeals in *In re*

---

[18] *See Food King, Inc. v. Norkus Enterprises, Inc.*, 2006 WL 3674997, *5-6 (D. N.J. 2006) (dismissing tortious interference claim against a buyer based on finding in the order approving the sale that the buyer was a "good faith purchaser under Section 363(m)"). *See also*, *Regions Bank v. J.R.. Oil Co., LLC*, 387 F.3d 721, 731-32 (8th Cir. 2004) (granting summary judgment against plaintiff on fraud and conspiracy claim on same grounds).

[19] Paragraph H states, "The sale and auction procedures were followed and Debtors properly exercised their discretion in the analysis of the tendered bid submissions." Paragraph I states, "The Debtor's reasonable business judgment was appropriate and neither the bid of Direct Fuels/Insight nor GAF Holdings LLC satisfied the requirements of the auction and sale procedures, therefore neither bidder was entitled to be designated a "Qualified Bidder." And paragraph K states, "The Sale consideration to be realized by Debtors' estates pursuant to the Agreement is fair and reasonable."

*Ladd*,[20] that "the principle of res judicata should be invoked only after careful inquiry because it blocks 'unexplored paths that may lead to truth.'"[21] GAF argues that the application of collateral estoppel here will do just that because the "newly" discovered evidence shows that the (alleged) truth proves that the Defendants grossly misrepresented to the Court the value of the Coffeyville Assets. The Court declines to create an equitable exception to the application of collateral estoppel here for four reasons.

First, as noted above, the Court is not inclined to accept the allegedly "new" evidence as a basis, equitable or otherwise, for challenging the final orders of this Court which GAF never appealed and are now over three years old – especially in light of the fact that that evidence was discovered almost two years ago.

The second reason the Court declines to create an equitable exception to the application of collateral estoppel here flows directly from the first. Because GAF waited nearly two years to bring this complaint after discovering the "new" evidence, GAF's request for equitable treatment in this Court is not well taken. He who seeks equity, must do equity.[22]

Moreover, this Court is not inclined to extend *In re Ladd* under these circumstances. In *In re Ladd*, the Court of Appeals decided not to apply collateral estoppel for the primary reason that the debtors had "little motivation" or "little incentive" to fully litigate the issue the trustee sought to preclude them from re-litigating.[23] In this case, however, GAF seeks to invoke the equitable exception to collateral estoppel based on the discovery of new evidence. Without ruling out the possibility that newly discovered evidence might be grounds to suspend the application of collateral estoppel in another case, the Court believes it is imprudent to create such an

---

[20] *Ladd v. Ries* (*In re Ladd*), 450 F.3d 751 (8th Cir. 2006).

[21] *Id.* at 755 (quoting *Lovell v. Mixon*, 719 F.2d 1373, 1377 (8th Cir. 1983)).

[22] *See Prow v. Medtronic, Inc.*, 770 F.2d 117, 122 (8th Cir. 1985).

[23] *In re Ladd*, 450 F.3d at 754-55.

exception in instances such as this one where the evidence is almost two years old and the one-year time limit for bringing a Rule 60(b) motion has expired.[24]

Third, although GAF's "new" evidence might not have been available at the time the Court ruled on GAF's Rule 60(b) motion in February 2004, GAF's allegation that the price CRLLC paid for the Coffeyville Assets was grossly inadequate is not new. GAF raised the same issue then, and the Court rejected it. GAF did not appeal that order, and the Court has no intention on revisiting that issue now.

Finally – and here the Court applies the new "plausibility" standard of *Twombly* for evaluating a complaint on a motion to dismiss – the Court is simply not persuaded that the fraud allegedly perpetrated on the Court by the Defendants in falsely promoting the "Albatross" image of the Coffeyville Assets, which image is allegedly belied by the new evidence, plausibly calls into doubt all of the findings of this Court that the sale was negotiated at arm's length, without collusion, and in good faith within the meaning of § 363(m) of the Bankruptcy Code.

Even if the Court determined that GAF is not bound by collateral estoppel to the Court's earlier findings that bar GAF's complaint, the Defendants are still immune from GAF's lawsuit under § 363(m) of the Bankruptcy Code, which provides purchasers (and by the terms of the Sale Order – the seller, as well) the same, if not greater, protection from attacks on the propriety of the sale of assets under § 363 of the Bankruptcy Code. With a simple transposition of the relevant parties and orders, language from *Regions Bank*, is directly on point and worth quoting at length here:

> Normal principals [*sic*] of res judicata, however, are not necessary for the [Sale Order] to bar [GAF's] claims to the extent those claims relate to the sale of the collateral. The bankruptcy court in [Farmland's] bankruptcy approved the sale and

---

[24] Fed. R. Civ. P. 60(b) provides in pertinent part:
**Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.**
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

found the sale to be in good faith, for fair value, and in the best interest of [Farmland] and its creditors. A bankruptcy sale under 11 U.S.C. § 363, free and clear of all liens, is a judgment that is good as against the world, not merely as against parties to the proceedings.  As the Seventh Circuit has held:

> [I]nsofar as [a] fraud suit is ... on behalf of nonparties to the sale proceeding ... it is not barred by res judicata. But it is barred. A proceeding under section 363 is an in rem proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding.  *Gekas v. Pipin* (*In the Matter of Met-L-Wood Corp.*), 861 F.2d 1012, 1017 (7th Cir. 1988).

The [Sale Order], therefore, is shielded from collateral attack not by res judicata, but by virtue of the nature of rights transferred under 11 U.S.C. § 363.[25]

GAF is not entitled to any equitable exception to this rule for the same reasons it is not entitled to an exception to the application of collateral estoppel discussed above.

### *2. GAF's Complaint is Substantively Deficient on its Face*

GAF accuses the Defendants of tortiously interfering with its business expectancy.  To prevail on a claim for tortious interference with a contract or business expectancy under Missouri law, a plaintiff must establish: (1) a contract or a valid business expectancy; (2) the defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from defendant's conduct.[26]  GAF's complaint fails to satisfy any of these elements.

First, GAF cannot establish that it had a valid business expectancy (GAF does not contend that it had a contract with Farmland or the Liquidating Trustee) because GAF never earned the right to participate in an auction of the Coffeyville Assets under the terms of the Sale Procedures Order.[27]

To establish a valid business expectancy under Missouri law, the facts must show that the

---

[25] *Regions Bank,* 387 F.3d at 731-32.

[26] *Deutsche Fin. Servs. Corp. v. BCS Ins. Co.*, 299 F.3d 692, 696 (8th Cir. 2002) (citing *Community Title Co. v. Roosevelt Federal Sav. and Loan*, 796 S.W.2d 369, 372 (Mo. 1990)).

[27] Because CRLLC was the only party that met the requirements of the Sale Procedure Order to participate in an auction, no auction was ultimately necessary.

13

plaintiff had more than a mere hope of establishing a business relationship.[28]  "In order to have a claim for interference with a valid business expectancy, it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged.  If it is not, there was nothing for defendants to have interfered with."[29]

In this case, GAF alleges that the Defendants interfered with its valid business expectancy of "economic benefit."  The Court interprets this vague and somewhat circular allegation in the context of an auction of bankruptcy estate assets as a contention that but for the Defendants' interference, GAF had a reasonable and valid expectation that it would have been the successful bidder on the Coffeyville Assets.[30]

GAF cannot establish that it had a reasonable expectation that it would have been the successful bidder on the Coffeyville Assets because, quite simply, GAF was never entitled to participate in the auction.  Under the terms of the Sale Procedures Order only "Qualified Bidders" were entitled to participate in the auction.  To become a qualified bidder, a party had to submit to Farmland a bid in a specific form, containing sufficient information to evaluate the value of the bid, and accompanied by a deposit of 10% of the bid amount.  Farmland then reviewed the bids submitted to determine, in its business judgment, whether a bid met those requirements.

GAF submitted a bid on October 29.  On October 30, Farmland notified GAF that its bid was deficient in several respects.   GAF contends that it immediately challenged Farmland's disqualification of its bid, but GAF did not bring these concerns to the Bankruptcy Court at that time.  Nor did GAF appeal the Court's specific finding in the Sale Order that "[t]he Debtor's reasonable business judgment was appropriate and neither the bid of DirectFuels/Insight nor GAF

---

[28] *Wash Solutions, Inc. v. PDQ Mfg.*, 395 F.3d 888 (8th Cir. 2005) (applying Missouri law of tortious interference).

[29] *Id.*

[30] *See Shafer v. Western Holding Corp.*, 673 S.W.2d 117, 121-22 (Mo. Ct. App. 1984) (requiring plaintiff to show that "but for" the defendants' conduct, plaintiff would have realized on his business expectancy).
    Interestingly (and perhaps necessarily), GAF never directly states its allegation in these terms.  Rather, GAF's argument focuses on the Defendants' alleged perversion of the entire bid solicitation and approval process which, GAF contends, robbed GAF of its right to participate in a fair auction of the Coffeyville Assets.  But the mere participation in the process would not confer an economic benefit on GAF – only winning that process would.  And GAF has not specifically alleged that but for the Defendants' conduct, it would have been the purchaser of the Coffeyville Assets.

Holdings LLC satisfied the requirements of the auction and sale procedures, therefore neither bidder was entitled to be designated a 'Qualified Bidder' ";[31] or the general findings of the Court confirming the propriety of the bidding process.[32]

Although GAF did not appeal these findings, it did challenge them in its Rule 60(b) Motion, advancing many of the same arguments it makes in the instant motion – *i.e.*, that the Defendants improperly disqualified its bid, that they disseminated incomplete or inaccurate information, that they hindered GAF's attempts at due diligence, and that the Defendants misrepresented the value (promoting the "Albatross" image) of the Coffeyville Assets to the Court.[33] But the Court was not persuaded and ultimately denied GAF's motion.

Because GAF has never appealed the Court's order denying its Rule 60(b) Motion, and the one-year time limit for reconsideration of that order under Fed. R. Civ. P. 60(b) has long past, GAF is collaterally estopped from attacking the findings in that order,[34] and, therefore, is bound by the Court's findings that it was never entitled to participate in the auction of the Coffeyville Assets. Having failed to earn the right to participate in the auction, GAF's hope in realizing any economic benefit by purchasing the Coffeyville Assets never matured into a valid and reasonable business expectancy.

---

[31] GAF maintains that this finding only confirms that Farmland exercised its reasonable business judgment in disqualifying GAF's bid and is not an affirmative determination by the Court that GAF was not entitled to be a Qualified Bidder. However, the conjunctive structure of this provision does not support that interpretation. Moreover, the issue is moot without splitting linguistic hairs; paragraph L of the Sale Order contains an affirmative finding that there were no qualifying competing bids.

[32] From the Sale Order, see paragraph E ("A reasonable opportunity has been afforded any interested party to make a higher or better offer for the Transferred Assets or to object and be heard regarding the [Sale] Motion."), paragraph H ("The sale and auction procedures were followed and the Debtors properly exercised their discretion in the analysis of the tendered bid submissions."), and paragraph L ("The Agreement and the Transactions contemplated by the Agreement were negotiated and have been and are undertaken by Debtors and Buyers at arm's length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code. *No qualifying Competing Bids were received in accordance with the Procedures Order.*")(emphasis added). In the Court's Memorandum Opinion denying GAF's Rule 60(b) Motion, the Court also found that "the sale was conducted at arm's length and with intense negotiations."

[33] GAF's suggestion that the allegedly false "Albatross" image of the Coffeyville Assets renders all of those findings suspect and subject to challenge is misguided, in that there is no logical or causal relationship between the allegedly understated value of the assets and the technical qualification of GAF's bid. To the contrary, if the Court had truly been bamboozled into thinking that the Coffeyville Assets were an "Albatross," it is just as likely that it would have been inclined to be more critical of Farmland's decisions to disqualify other interested bidders.

[34] The elements and application of collateral estoppel are discussed above.

Furthermore, GAF has failed to allege a single fact which would support an inference that GAF would have been the winning bidder, even if Farmland had determined that GAF was a "Qualified Bidder". To the contrary, the logical (and most plausible) inference drawn from GAF's central contention that CRLLC had undisclosed information that the Coffeyville Assets were worth significantly more than it ultimately paid for them is that CRLLC would have outbid GAF at the auction.

The other elements necessary to establish GAF's cause of action for tortious interference with business expectancy – (2) the defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from defendant's conduct – fall like dominoes as a result of GAF's inability to establish a reasonable business expectancy under the circumstances. The Defendants could not have had knowledge of, or intentionally interfered with, GAF's business expectancy because none existed.[35] The issue of justification is moot for the same reason. And the element of damages fails because GAF cannot establish causation; as noted above, if GAF didn't have a reasonable and valid business expectancy, then there was nothing for Defendants to have interfered with.

GAF's failure to state a claim against the Defendants for tortious interference also renders its claim for civil conspiracy substantively, and fatally, deficient. Under Missouri law, civil conspiracy requires the commission of one or more unlawful acts.[36] The only unlawful act GAF has alleged is that the Defendants tortiously interfered with its business expectancy. If that unlawful act cannot be proven, then, as a matter of law, civil conspiracy cannot have been committed in this case.

## CONCLUSION

For the reasons stated above, GAF's complaint will be dismissed for two reasons: (1) it is an impermissible collateral attack on the orders of this Court approving the procedures, validity, and

---

[35] Even if GAF established a reasonable business expectancy, the Defendants could not have intentionally interfered with it because the Court found in the Sale Order that the bankruptcy sale was in "good faith," which, by definition, would bar claims for intentional torts.

[36] *Temporomandibular Joint* (*TMJ*) *Implant Recipients v. Dow Chem. Co.* (*In re Temporomandibular Joint Implants*(*TMJ*) *Prod. Liab. Litig.*), 113 F.3d 1484, 1498 (8th Cir. 1997).

16

finality of the sale of the Coffeyville Assets to CRLLC, and (2) it fails to state a claim upon which relief can be granted because the complaint is devoid of facts establishing essential elements of GAF's state-law claim for tortious interference with its business expectancy.   A separate order consistent with this Memorandum Opinion shall be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 17th day of July 2007.

/s/    Jerry W. Venters
United States Bankruptcy Judge

Copy of the foregoing mailed electronically or
conventionally to:
Norman A. Abood
Lee R. Anderson
Lisa A. Epps
Brian T. Fenimore
Anthony L. Gosserand
Todd W. Ruskamp
Michael .J Small
John A. Watt
Joseph Aronauer
Samuel Goldfarb
Kenneth S. Yudell